RICHARD VERVALEN *v.* OBADIAH OLDER and others.

An injunction against a mortgagor, restraining him from quarrying on a quarry lot, the half of which was conveyed as such to him by the mortgagee, and to secure the consideration for which conveyance the mortgage was given, was dissolved on answer denying the charges in the bill from which it might be inferred that the defendant was improperly impairing the value of the mortgaged premises and endangering the complainant's security.

The bill, filed Nov. 19, 1849, is for the foreclosure of a mortgage, dated February 24th, 1845, given by Obabiah Older and Margaret his wife, to Richard Vervalen, the complainant, of the equal and undivided one-half part of a stone quarry, lying at the edge of the Hudson river, and particularly described in the bill, to secure the payment of a bond of the same date, executed by the said Obadiah Older to the complainant, in the penal sum of five hundred dollars, conditioned for the payment of $250, as follows : $100 on the 24th of February, 1847 ; $100 on the 24th of February, 1850 ; and $50, the residue, on the 24th of February, 1851, with interest yearly on each payment from the date of the bond, at 5 per cent. a year ; and it was provided, in the condition of the bond, that if any default should be made in the payment of any of the said sums, or of the interest, at the specified time for payment, then that, after such default, that part of the principal of each payment that should be unpaid at the specified time, with all arrearages of interest thereon, should, at the option of the complainant, become and be due and payable immediately thereafter.

On the 20th of December, 1847, the interest was paid in full up to that date, and $34.19 of principal. And on the 5th of January, 1848, a payment of $65.80 of principal was made, and no other payment, either of principal or interest had been made.

The bill claims, that by reason of default in not making the first payment at the time specified in the condition of the bond, and of default in the non-payment of the yearly interest which had accrued, the whole of the principal sum mentioned in the

condition of the bond, except the sums paid as aforesaid, were due and payable at the time of filing the bill, with arrears of interest thereon.

The bill states that the premises covered by the mortgage are situated under what are called the Palisades, on the west shore of the Hudson river, and that the only value thereof consists in the stone with which they are covered, and of which they are composed; that quarries have been opened on the said premises, and large quantities of stone have been taken therefrom and sold.

That said Obadiah Older has, since the giving of the said mortgage, associated with himself in working said quarries, on terms the particulars of which are unknown to the complainant, whereby they claim to have an interest in the said premises, Joseph Dubois and John J. Vervalen, they knowing the existence of said mortgage; and that the said Obadiah, Joseph and John, with their workmen and laborers, are employed in getting out, carrying away, and selling stone from the said quarries on the mortgaged premises; and that by reason thereof the security of the complainant has become lessened, and the complainant is in danger of losing his security altogether, if they, the defendants, continue to work the said quarries, by the same becoming exhausted of all their stone. And that the mortgaged premises are a slender and scanty security for the principal and interest moneys due the complainant on his said bond and mortgage.

The bill prays a decree of foreclosure, or for the sale of the mortgaged premises; and also prays an injunction restraining the defendants from committing any further waste or destruction upon the mortgaged premises, by digging, excavating and blasting stone and rock, or carrying, removing or selling the same from the said premises.

On the reading and filing of this bill the injunction prayed was allowed.

The defendant Older put in his several answer, in which he says, that no part of the first instalment of $100, which became due on the 24th of February, 1847, is due, and avers that the whole of said instalment has been paid by him and received by

the complainant; and he further says, that all the interest due on the said instalment, and also all the interest due on the residue of the principal money secured by the said bond and mortgage, until the 20th of December, 1848, was paid by him to and accepted by the complainant, and that no part thereof is now (at the time of putting in his answer) due from him to the complainant; and that he, this defendant, is in no default whatever in the payment of any principal or interest due according to the condition of the said bond and mortgage, the said complainant having, on the 20th of December, 1848, accepted the interest due on the whole of said sum to that date, and thereby made the yearly payment of interest to begin from that date.

He admits that the only use and value of the premises is for quarrying stone.

He denies that he has in any way associated with him in the working of the said quarry the defendants Joseph Dubois and John Vervalen, or either of them; but says that the said Joseph and John work on said quarry in their own right, claiming to be owners of the other individed half thereof, as this defendant is informed and believes by virtue of a deed from the complainant, in fee, for such other individed half.

That this defendant, as owner of one undivided half of said quarry in fee, made partition thereof with the said John and Joseph, on or about May 28th, 1849, by virtue of which the north half thereof was released and assigned to the said John and Joseph in fee, and the south half thereof to this defendant, but that the said John and Joseph derive their title to the said lot from the complainant, and not from this defendant; and that this defendant does not work or quarry on the lot so assigned to them, nor do they work on the part so assigned to him.

He says that the premises were conveyed to him by the complainant, by deed, dated February 22d, 1845, for the consideration of $250, by the description and appellation of a stone quarry lot, and that the complainant's mortgage was given to secure the payment of the said consideration money. That said premises were sold to this defendant to be used as a quarry, and to be worked immediately by him, the same being the only use that could be made of the same; and that the payment of the said

consideration money was on purpose and advisedly, by express agreement, made in small sums and at distant periods, so that this defendant, who is a laborer and a quarryman, and poor, and without any other means of payment, might earn, by his labor and industry in working said quarry, the means of paying said instalments as they should become due ; and that it was well understood and expressly agreed, at the time of said purchase and the giving of said mortgage, that defendant should forthwith begin and continue to work said quarry ; and without such understanding he would not have bought, nor the complainant have sold to him, as he would have had no ability to pay.

That, since the said purchase and the giving of the said mortgage, he has expended a large sum of money in permanent improvements on said property ; that he has erected thereon a dock for the landing of vessels, and certain fixtures called ways for the conveyance of the heavy stone from the steep banks or palisades to the vessels at the docks ; and that said machinery and docks have cost and are worth over $200, and are an improvement of the value of the premises to that amount.

He admits that he has quarried and carried away stone; but says that what he has taken out has not at all lessened the value of the quarry, the work as yet done having made said quarry more accessible and valuable.

That for the last nine months he has not worked said quarry to any extent, having taken out only some seven boat loads during that time.

That said quarry would not be half exhausted in fifteen years, by the taking away stone in the most rapid way it has ever been done by this defendant, or by all the means at present at his command to work the same.

That the complainant, or any one for him, had never asked this defendant to pay the money secured by said mortgage, or the interest thereon, or any part thereof, nor requested him to desist from working in said quarry. And that the security of the complainant is not at all endangered by the manner in which this defendant had worked said quarry, and was continuing to work and designed to work it; but that this defendant has greatly

added to the value of said property by his improvements on the same.

That, since the filing of complainant's bill, this defendant, though he knew that no principal or interest was due, yet, to avoid costs of litigation, procured and tendered to the complainant the principal sum of $150, and all interest accrued thereon, remaining unpaid on said bond and mortgage, in good bank bills of banks in the city of New York, to which bills the complainant did not object; and that the complainant refused to receive the same unless this defendant also paid to him the costs incurred by him in filing his said bill and procuring the said injunction.

The other two defendants put in their joint and several answer.

They say they have not in any way been associated with said Obadiah Older in the working of said quarry; but that the complainant, by his deed, dated August 27th, 1847, conveyed to them in fee an equal undivided half part of the middle portion of said quarry tract, of four acres, for $150; the other undivided half of said tract being then held by the said Obadiah Older, by virtue of a prior conveyance from the complainant; and that said deed to these defendants contained the usual covenants of warranty, for quiet enjoyment, further assurance, and against incumbrances; and that all the quarrying done by these defendants on said stone quarry tract was done on said portion so conveyed to them by the complainant, under and by virtue of said title so derived from the complainant, and not by virtue of any agreement with or association with said Obadiah Older. That these defendants, being together seized of one undivided moiety of said lands as tenants in common with said Obadiah Older, under titles derived from the complainant, did by releases, on the 28th of May, 1849, assign the metes and bounds of each half share, the north half being assigned to these defendants, and the south half to the said Obadiah Older, of the said portion of the said quarry tract so conveyed to these defendants.

They deny that they or either of them have quarried any stone from the half of said Obadiah Older in said premises. And deny

that the value of said quarry lot has been impaired by any quarrying or taking away stone by them or said Older; but say that all the quarrying as yet done on either part has only made the quarry and stone more accessible, and the quarry more valuable, besides and independent of permanent improvements and fixtures, to the value of more than $200, put on the said lot by the said Obadiah Older.

On these answers a motion was made to dissolve the injunction.

*A. O. Zabriskie* in support of the motion. He cited *Drury on Inj.* 136, 163; 2 *Green's Ch.* 467; 1 *Halsted's Ch. Rep.* 397.

*R. K. Paulison* contra. He cited 1 *Jac. Law Dict.* 357.

THE CHANCELLOR. Quarrying is the only use that can be made of the ground described in the bill; and the complainant sold to the defendant the undivided half of it as a quarry lot. The proper use of it as such cannot be considered waste. And the answers deny all those charges in the bill from which it might be inferred that the defendant was improperly impairing the value of the mortgaged premises and endangering the complainant's security. The injunction will be dissolved.

Order accordingly.